## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

CAPITAL ONE AUTO FINANCE, a division of )
CAPITAL ONE, N.A. )
           )
          **Plaintiff,** )     **CASE NUMBER:**_____
           )
**v.** )
           )
**MONZON AUTO SALES INC. ,** )     **TRIAL BY JURY DEMANDED**
           )
          **Defendant.** )

## COMPLAINT

Plaintiff, Capital One Auto Finance, a division of Capital One, N.A, ("COAF") files its Complaint against Defendant Monzon Auto Sales Inc. ("Monzon"), stating as follows:

## JURISDICTION, VENUE AND THE PARTIES

1.      This is an action for damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

2.      Capital One, N.A. is a national bank with its principal place of business in the Commonwealth of Virginia. COAF is a division of Capital One, N.A. located in the State of Texas.

3.      Monzon Auto Sales Inc. is a Florida corporation with its principal place of business and headquarters located in Hialeah, Florida and whose principle business is the sale of vehicles.

4.      This Court has jurisdiction over the parties and the subject matter of this action pursuant to 28 U.S.C. § 1332.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

6.      All conditions precedent to the filing of this action have occurred, are deemed waived, excused, or are otherwise satisfied.

**FACTS**

7.      On or about March 5, 2015, COAF and Monzon entered into a written Dealer Agreement (hereinafter, the "Contract," attached hereto as Ex. 1) whereby Monzon agreed to the terms of the Contract as a condition for COAF to purchase vehicle financing contracts from Monzon.

8.      Monzon agreed to warranted, represented and/or covenanted:

   a. under Section 1, subsection (d) of the Contract for each Receivable "[d]ealer has obtained a certificate of title for the subject motor vehicle reflecting C.O.A.F. as the primary lienholder." (See Ex. 1, Section 1, subsection (d));

   b. under Section 1, subsection (j) of the Contract for each Receivable "that the descriptions of said new and/or used motor vehicle, or any services related thereto are in all respects true and complete." (See Ex. 1, Section 1, subsection (j));

   c. under Section 1, subsection (k) of the Contract for each Receivable "that the Debtor or Debtors named in the Receivables are bona fide Debtors and each Debtor, and any guarantor, had legal capacity to make such contracts." (See Ex. 1, Section 1, subsection (k));

   d. under Section 1, subsection (p) of the Contract for each Receivable "that on the date of the assignment of the Receivables the subject new and/or used vehicle has

been delivered to the Debtor and all required services have been fully performed."
(See Ex. 1, Section 1, subsection (p)).

e.  under Section 1, subsection (q) of the Contract for each Receivable "that the sale
and related financing of the subject new and/or used motor vehicle, and all matter
related thereto, comply in all material respects, and was consummated in strict
compliance, with all requirements of applicable federal, state, and local laws, and
regulations thereunder, including, without limitations, usury laws, the Uniform
Commercial Code, and other consumer credit laws and equal credit opportunity
and disclosure laws." (See Ex. 1, Section 1, subsection (q)); and

f.  under Section 3 of the Contract that "[a]t any time prior to the scheduled maturity
of any receivable, and upon notice and demand from C.O.A.F., the Dealer hereby
agrees to repurchase from C.O.A.F. any Receivable for which there has been a
breach of one or more of the Dealer's representations and warranties as set forth in
Paragraph 1, above." (See Ex. 1, Section 3).

### F. Guzman Loan

9.      Monzon submitted an application for financing for F. Guzman for the purchase of
a 2013 Chevrolet Equinox (hereinafter, the "Guzman Application").

10.     The Guzman Application reflected an attempt to finance the purchase of a 2013
Chevrolet Equinox equipped with a 3.6 L V6 engine, fixed running boards, leather seats, and a
towing/camper package from Monzon.

11.     Proof of income was required for the Guzman Application. COAF received bank
statements from Monzon listing F. Guzman as the account holder of a Wells Fargo bank account.

12.     COAF approved the Guzman Application and funded the Loan (reference no. ending in -0083) based on the information provided by Monzon.

13.     After funding the Guzman Application, COAF contacted F. Guzman to verify information regarding the purchase.

14.     F. Guzman stated to COAF that the vehicle is a 2013 Chevrolet Equinox that is not equipped with a 3.6 L V6 engine, fixed running boards, leather seats or a towing/camper package.

15.     As a result of the discrepancy between equipment listed by Monzon on the Guzman Application that was not included on the vehicle, the value of the vehicle was inflated by $1,675.00.

16.     Since the time of funding, COAF also discovered that bank statements submitted by Monzon with the Guzman Application had identical transaction descriptions and withdrawals as those submitted in another individual's application. The descriptions and withdrawals in the bank statements submitted with the Guzman Application are also similar to those submitted in another individual's application.

17.     COAF relied on these bank statements when funding the loans at issue, including the Guzman Loan.

18.     COAF demanded Monzon repurchase the Guzman Loan on September 30, 2016 (See Letter to Monzon, attached hereto as Ex. 2, without exhibits). Monzon has failed and/or refused to repurchase the Loan.

### F. Barrios Loan

19.     Monzon submitted an application for financing for F. Barrios for the purchase of a 2016 Hyundai Elantra Limited I4 (hereinafter, the "Barrios Application").

20.     The Barrios Application reflected an attempt to finance the purchase of a 2016 Hyundai Elantra Limited I4 equipped with aluminum/alloy wheels from Monzon.

21.     COAF approved the Barrios Application and funded the Loan (reference no. ending in -8068) based on the information provided by Monzon.

22.     After funding the Barrios Application, COAF contacted F. Barrios to verify information regarding the purchase.

23.     F. Barrios stated to COAF that the vehicle is a 2016 Hyundai Elantra SE that is not equipped with aluminum/alloy wheels.

24.     As a result of the discrepancy between the model of the vehicle listed by Monzon on the Barrios Application and the vehicle purchased and the equipment listed by Monzon on the Barrios Application that was not included in the vehicle, the value of the vehicle was inflated by $4,450.

25.     Pursuant to Section 3 of the Contract, COAF demanded Monzon to repurchase the Barrios Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### A. Aguayo and An. Rodriguez Loan

26.     Monzon submitted an application for financing for A. Aguayo and An. Rodriguez for the purchase of a 2013 Toyota Avalon XLE Touring (hereinafter, the "Aguayo/Rodriguez Application").

27.     The Aguayo/Rodriquez Application reflected an attempt to finance the purchase of a 2013 Toyota Avalon XLE Touring.

28.     Proof of residence was required for the Aguayo/Rodriguez Application. COAF received a MetroPCS statement from Monzon for A. Aguayo and a DirecTV statement from Monzon for An. Rodriguez.

29.     COAF approved the Aguayo/Rodriguez Application and funded the Loan (reference no. ending in -4408) based on the information provided by Monzon.

30.     After funding the Aguayo/Rodriguez Application, COAF contacted A. Aguayo to verify information regarding the purchase.

31.     A. Aguayo stated to COAF that the vehicle is a 2013 Toyota Avalon XLE, not Toyota Avalon XLE Touring.

32.     After funding the Aguayo/Rodriguez Application, COAF contacted the manufacturer.

33.     The manufacturer verified that the vehicle is a 2013 Toyota Avalon XLE, not Toyota Avalon XLE Touring.

34.     As a result of the discrepancy between the model of the vehicle listed by Monzon on the Aguayo/Rodriguez Application and the vehicle purchased, the value of the vehicle was inflated by $3,150.

35.     A. Aguayo also advised COAF that she submitted a Sprint statement and an Xfinity statement as proof of residence on the Aguayo/Rodriguez application.

36.     After funding the Aguayo/Rodriguez Application, COAF contacted MetroPCS. MetroPCS verified that the phone number listed on the statement submitted by Monzon is not a valid number with MetroPCS.

37.     After funding the Aguayo/Rodriguez Application, COAF contacted DirectTV. DirectTV confirmed that the account number listed on the statement submitted by Monzon is not a valid account number with DirectTV.

38.     Since the time of funding, COAF discovered that the statements submitted by Monzon with the Aguayo/Rodriguez Application as proof of residence misrepresented proof of residence at the time of funding.

39.     COAF relied on the proof of residence when funding the Aguayo/Rodriguez Loan.

40.     Pursuant to Section 3 of the Contract, COAF demanded Monzon to repurchase the Aguayo/Rodriguez Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

## M. Caro Loan

41.     Monzon submitted an application for financing for M. Caro for the purchase of a 2013 Chevrolet Camaro (hereinafter, the "Caro Application").

42.     The Caro Application reflected an attempt to finance the purchase of a 2013 Chevrolet Camaro equipped with a navigation system.

43.     Proof of income was required for the Caro Application. COAF received bank statements from Monzon listing M. Caro as the account holder of a Bank of America bank account.

44.     COAF approved the Caro Application and funded the Loan (reference no. ending in -8081) based on the information provided by Monzon.

45.     After funding the Caro Application, COAF contacted M. Caro to verify information regarding the purchase.

46.     M. Caro advised COAF that the vehicle purchased was a 2013 Chevrolet Camaro that was not equipped with a navigation system.

47.     As a result of the discrepancy between the equipment listed by Monzon on the Caro Application that was not included on the vehicle, the value of the vehicle was inflated by $600.00.

48.     Since the time of funding, COAF also discovered that bank statements submitted with the Caro Application had withdrawal descriptions identical to those submitted with another, unrelated individual's application.

49.     COAF relied on these bank statements when funding the loans at issue, including the Caro Loan.

50.     Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Caro Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### B. Gray Loan

51.     Monzon submitted an application for financing for B. Gray for the purchase of a 2014 Chevrolet Town & Country (hereinafter, the "Gray Application").

52.     Proof of income was required for the Gray Application. COAF received bank statements from Monzon listing B. Gray as the account holder of a Wells Fargo account.

53.     COAF approved the Gray Application and funded the Loan (reference no. ending in -7203) based on the information provided by Monzon.

54.     Since the time of the funding, COAF discovered that the bank statements submitted by Monzon with the Gray Application had identical withdrawals as those submitted in another individual's application and that the pattern of withdrawals on the statements were similar.

55.     COAF relied on these bank statements when funding the loans at issue, including the Gray Loan.

56.     Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Gray Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

**D. Gonzalez Loan**

57.     Monzon submitted an application for financing for D. Gonzalez for the purchase of a 2015 Chevrolet Camaro on December 14, 2015 (hereinafter, the "D. Gonzalez Application").

58.     COAF approved the D. Gonzalez Application and funded the Loan (reference no. ending in -5661) based on the information provided by Monzon.

59.     After funding the D. Gonzalez Application, COAF contacted D. Gonzalez to verify information regarding the purchase.

60.     D. Gonzalez stated to COAF that he did not take possession of the vehicle until January 11, 2016.

61.     Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the D. Gonzalez Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

**A. Guerra Loan**

62.     Monzon submitted an application for financing for A. Guerra for the purchase of a 2013 Mazda CX-5 (hereinafter, the "Guerra Application").

63.     The Guerra Application reflected an attempt to finance the purchase of a 2013 Mazda CX-5 equipped with fixed running boards, luggage rack, navigation system, roll bar, and a towing/camper package from Monzon.

64.     COAF approved the Guerra Application and funded the Loan (reference no. ending in -8518) based on the information provided by Monzon.

65.    After funding the Guerra Application, COAF contacted A. Guerra to verify information regarding the purchase.

66.    A. Guerra advised COAF that the vehicle is a 2013 Mazda CX-5 that is not equipped with fixed running boards, luggage rack, navigation system, roll bar, or a towing/camper package.

67.    As a result of the discrepancy between the equipment listed by Monzon on the Guerra Application that was not included on the vehicle, the value of the vehicle was inflated by $900.00.

68.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Guerra Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### R. Palacios Loan

69.    Monzon submitted an application for financing for R. Palacios for the purchase of a 2013 Dodge Caravan SXT (hereinafter, the "Palacios Application").

70.    The Palacios Application reflected an attempt to finance the purchase of a 2013 Dodge Caravan SXT equipped with fixed running boards, luggage rack, rear entertainment system, and towing/camper package.

71.    Proof of income was required for the Palacios Application. COAF received bank statements from Monzon listing R. Palacios as the account holder of a Regions Bank account.

72.    COAF approved the Palacios Application and funded the Loan (reference no. ending in -2655) based on the information provided by Monzon.

73.     After funding the Palacios Application, COAF contacted R. Palacios to verify information regarding the purchase.

74.     R. Palacios advised COAF that the vehicle purchased is a 2013 Dodge Caravan not equipped with fixed running boards, luggage rack, rear entertainment system, or towing/camper package.

75.     As a result of the discrepancy between the equipment listed by Monzon on the Palacios Application that was not included on the vehicle, the value of the vehicle was inflated by $1,050.00.

76.     Since the time of funding, COAF discovered that bank statements submitted by Monzon with the Palacios Application had withdrawal amounts and descriptions identical to those submitted with another individual's application.

77.     COAF relied on these bank statements when funding the loans at issue, including the Palacios Loan.

78.     R. Palacios also advised COAF that the vehicle was sold at a different dealer, which is where R. Palacios test drove and took possession of the vehicle. R. Palacios stated that he has never been to Monzon.

79.     Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Palacios Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### Ang. Rodriguez Loan

80.     Monzon submitted an application for financing for Ang. Rodriguez for the purchase of a 2014 Toyota Camry XLE (hereinafter, the "Ang. Rodriguez Application").

81.     The Ang. Rodriguez Application reflected an attempt to finance the purchase of a 2014 Toyota Camry XLE equipped with aluminum/alloy wheels and a power sunroof from Monzon.

82.     Proof of income was required for the Ang. Rodriguez Application. COAF received bank statements from Monzon listing Ang. Rodriguez as the account holder of a Bank of America account.

83.     COAF approved the Ang. Rodriguez Application and funded the Loan (reference no. ending in -1075) based on the information provided by Monzon.

84.     After funding the Ang. Rodriguez Application, COAF contacted Ang. Rodriguez to verify information regarding the purchase.

85.     Ang. Rodriguez advised COAF that the purchased vehicle was a 2014 Toyota Camry LE that is not equipped with aluminum/alloy wheels or a power sunroof.

86.     As a result of the discrepancy between the equipment listed by Monzon on the Ang. Rodriguez Application that was not included on the vehicle, the value of the vehicle was inflated by $2,400.00.

87.     Since the time of funding, COAF discovered that the bank statements submitted with the Ang. Rodriguez Application had had withdrawal amounts and descriptions identical to those submitted in other individuals' application.

88.     COAF relied on these bank statements when funding the loans at issue, including the Ang. Rodriguez Loan.

89.     Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Ang. Rodriguez Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### N. Gaitan Loan

90.     Monzon submitted an application for financing for N. Gaitan for the purchase of a 2014 Kia Sorento LX (hereinafter, the "Gaitan Application").

91.     The Gaitan Application reflected an attempt to finance the purchase of a 2014 Kia Sorento LX equipped with a third row seat, fixed running boards, navigation system, power seats, and towing/camping package.

92.     COAF approved the Gaitan Application and funded the Loan (reference no. ending in -0208) based on the information provided by Monzon.

93.     After funding the Gaitan Application, COAF contacted Norma Gaitan to verify information regarding the purchase.

94.     N. Gaitan advised COAF that the vehicle is a 2014 Kia Sorento that is not equipped with a third row seat, fixed running boards, navigation system, power seats, or a towing/camper package.

95.     As a result of the discrepancy between the equipment listed by Monzon on the Guerra Application that was not included on the vehicle, the value of the vehicle was inflated by $1,775.00.

96.     Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Gaitan Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### V. Crespo Loan

97.     Monzon submitted an application for financing for V. Crespo for the purchase of a 2013 Mazda 3 (hereinafter, the "Crespo Application").

98.     Proof of income was required for the Crespo Application. COAF received bank statements from Monzon listing V. Crespo as the account holder of a Bank of America account.

99.     COAF approved the Crespo Application and funded the Loan (reference no. ending in -5611) based on the information provided by Monzon.

100.    Since the time of funding, COAF discovered that the bank statements submitted by Monzon with the Crespo Application had some withdrawal amounts and descriptions identical to those submitted with another individual's application.

101.    COAF relied on these bank statements when funding the loans at issue, including the Crespo Loan.

102.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Crespo Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### G. Suarez Loan

103.    Monzon submitted an application for financing for G. Suarez for the purchase of a 2014 Chrysler Town & Country (hereinafter, the "Suarez Application").

104.   The Suarez Application reflected an attempt to finance the purchase of a 2014 Chrysler Town & Country equipped with fixed running boards, navigation system, and a towing/camper package from Monzon.

105.   COAF approved the Suarez Application and funded the Loan (reference no. ending in -8549) based on the information provided by Monzon.

106.   After funding the Suarez Application, COAF contacted G. Suarez to verify information regarding the purchase.

107.   G. Suarez stated to COAF that the vehicle is a 2014 Chrysler Town & Country that is not equipped with fixed running boards, navigation system, or a towing/camper package.

108.   As a result of the discrepancy between equipment listed by Monzon on the Suarez Application that was not included on the vehicle, the value of the vehicle was inflated by $1,025.00.

109.   Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Suarez Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### D. Morell Loan

110.   Monzon submitted an application for financing for D. Morell for the purchase of a 2015 Nissan Versa (hereinafter, the "Morell Application").

111.   Proof of income was required for the Morell Application. COAF received bank statements from Monzon listing D. Morell as the account holder for a Wells Fargo bank account.

112.    COAF approved the Morell Application and funded the Loan (reference no. ending in -0280) based on the information provided by Monzon.

113.    Since the time of funding, COAF discovered that bank statements submitted by Monzon with the Morell Loan had identical transaction descriptions and withdrawal amounts as those submitted with another individual's application.

114.    COAF relied on these bank statements when funding the loans at issue, including the Morell Loan.

115.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Morell Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### L. Ojeda Loan

116.    Monzon submitted an application for financing for L. Ojeda for the purchase of a 2015 Chrysler 300 (hereinafter, the "Ojeda Application").

117.    Proof of income was required for the Ojeda Application. COAF received bank statements from Monzon listing L. Ojeda as the account holder for a Wells Fargo account.

118.    COAF approved the Ojeda Application and funded the Loan (reference no. ending in -6890) based on the information provided by Monzon.

119.    Since the time of funding, COAF discovered that bank statements submitted by Monzon with the Ojeda Loan had similar transaction descriptions and withdrawal amounts as those submitted with other individuals' applications.

120.   COAF relied on these bank statements when funding the loans at issue, including the Ojeda Loan.

121.   Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Ojeda Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### A. Perez Loan

122.   Monzon submitted an application for financing for A. Perez for the purchase of a 2013 Toyota Camry (hereinafter, the "Perez Application").

123.   Proof of income was required for the Perez Application. COAF received bank statements from Monzon listing A. Perez as the account holder of a Wells Fargo bank account.

124.   COAF approved the Perez Application and funded the Loan (reference no. ending in -6462) based on the information provided by Monzon.

125.   Since the time of funding, COAF discovered that bank statements submitted by Monzon with the Perez Application had several withdrawals identical to those submitted with other individuals' applications.

126.   COAF relied on these bank statements when funding the loans at issue, including the Perez Loan.

127.   Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Perez Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### C. Clark Loan

128.    Monzon submitted an application for financing for C. Clark for the purchase of a 2015 Nissan Altima SV (hereinafter, the "Clark Application").

129.    The Clark Application reflected an attempt to finance the purchase of a 2015 Nissan Altima SV equipped with aluminum/alloy wheels from Monzon.

130.    The Clark Application reflected a down payment of $3,000.00 cash at the time of purchase.

131.    COAF approved the Clark Application and funded the Loan (reference no. ending in -7161) based on the information provided by Monzon.

132.    After funding the Clark Application, COAF contacted C. Clark to verify information regarding the purchase.

133.    C. Clark advised COAF that the vehicle is a 2015 Nissan Altima S, not SV, and is not equipped with aluminum/alloy wheels.

134.    C. Clark also stated that she did not make a cash down payment at the time of purchase.

135.    As a result of the discrepancy between the model of the vehicle listed by Monzon on the Clark Application and the vehicle purchased and the equipment listed by Monzon on the Clark Application that was not included with the vehicle, the value of the vehicle was inflated by $1,475.00.

136.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Clark Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### L. Gamez Loan

137.    Monzon submitted an application for financing for L. Gamez for the purchase of a 2015 Nissan Altima (hereinafter, the "Gamez Application").

138.    Proof of income was required for the Gamez Application. COAF received bank statements from Monzon listing L. Gamez as the account holder of a Wells Fargo bank account.

139.    COAF approved the Gamez Application and funded the Loan (reference no. ending in -0518) based on the information provided by Monzon.

140.    Since the time of funding, COAF discovered that bank statements submitted by Monzon with the Gamez Loan had several withdrawals identical to those submitted with other individuals' applications.

141.    COAF relied on these bank statements when funding the loans at issue, including the Gamez Loan.

142.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Gamez Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### C. Bonnett Loan

143.    Monzon submitted an application for financing for C. Bonnett for the purchase of a 2013 Volkswagen Golf (hereinafter, the "Bonnett Application").

144.    The Bonnett Application reflected a cash down payment of $3,000.00 at the time of purchase.

145.    Proof of income was required for the Bonnett Application. COAF received bank statements from Monzon listing C. Bonnett as the account holder of a Wells Fargo bank account.

146.    COAF approved the Bonnett Application and funded the Loan (reference no. ending in -4637) based on the information provided by Monzon.

147.    After funding the Clark Application, COAF contacted C. Bonnett to verify information regarding the purchase.

148.    C. Bonnett advised COAF that she only made a $1,000 cash down payment at the time of purchase.

149.    Since the time of funding, COAF discovered that bank statements submitted by Monzon with the Bonnett Loan had several withdrawals identical to those submitted with other individuals' applications.

150.    COAF relied on these bank statements when funding the loans at issue, including the Bonnett Loan.

151.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Bonnett Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### R. Martinez Loan

152.    Monzon submitted an application for financing for R. Martinez for the purchase of a 2013 Chevrolet Malibu (hereinafter, the "Martinez Application").

153.    Proof of income was required for the Martinez Application. COAF received bank statements from Monzon listing R. Martinez as the account holder in a Regions Bank account.

154.    COAF approved the Martinez Application and funded the Loan (reference no. ending in -1526) based on the information provided by Monzon.

155.    Since the time of funding, COAF discovered that bank statements submitted by Monzon with the Martinez Application had identical withdrawal amounts and descriptions to those submitted with another individual's application.

156.    COAF relied on these bank statements when funding the loans at issue, including the Martinez Loan.

157.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Martinez Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### G. Garcia Loan

158.    Monzon submitted an application for financing for G. Garcia for the purchase of a 2013 Nissan Maxima SV (hereinafter, the "Garcia Application").

159.    The Garcia Application reflected an attempt to finance the purchase of a 2013 Nissan Maxima SV equipped with Bose premium stereo and a sport package from Monzon.

160.    The Garcia Application reflected a cash down payment of $3,000.00 at the time of purchase.

161.    The Garcia Application reflected that G. Garcia was to be the sole owner of the vehicle and the party responsible for payments to COAF.

162.    COAF approved the Garcia Application and funded the Loan (reference no. ending in -7229) based on the information provided by Monzon.

163.    After funding the Garcia Application, COAF contacted G. Garcia to verify information regarding the purchase.

164.    G. Garcia advised COAF that the vehicle is a 2015 Nissan Altima S, not SV, that is not equipped with Bose premium stereo or sport package.

165.    As a result of the discrepancy between the model of the vehicle listed by Monzon on the Garcia Application and the vehicle purchased and the equipment listed by Monzon on the Garcia Application that was not included on the vehicle, the value of the vehicle was inflated by $3,450.00.

166.    G. Garcia also stated that she made a $1,000.00, not $3,000.00 cash down payment at the time of purchase.

167.    G. Garcia also advised COAF that the vehicle was purchased for her boyfriend, Al. Gonzalez.

168.     Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Garcia Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### E. Camaraza Loan

169.     Monzon submitted an application for financing for E. Camaraza for the purchase of a 2013 Volkswagen Passat Wolfsburg I5 (hereinafter, the "Camaraza Application").

170.     The Camaraza Application reflected an attempt to finance the purchase of a 2013 Volkswagen Passat Wolfsburg I5 equipped with aluminum/alloy wheels from Monzon.

171.     COAF approved the Camaraza Application and funded the Loan (reference no. ending in -4643) based on the information provided by Monzon.

172.     After funding the Camaraza Application, COAF contacted the manufacturer to verify information regarding the vehicle financed.

173.     The manufacturer advised COAF that the vehicle is a 2013 Volkswagen Passat S, not 2013 Volkswagen Passat Wolfsburg I5, and it was not equipped with aluminum/alloy wheels.

174.     As a result of the discrepancy between the model of the vehicle listed by Monzon on the Camaraza Application and the vehicle purchased and the equipment listed by Monzon on the Camaraza Application that was not included with the vehicle, the value of the vehicle was inflated by $925.00.

175.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Camaraza Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### M. Gonzalez Loan

176.    Monzon submitted an application for financing for M. Gonzalez for the purchase of a 2014 Mazda 2 (hereinafter, the "M. Gonzalez Application").

177.    Proof of income was required for the M. Gonzalez Application. COAF received bank statements from Monzon listing M. Gonzalez as the account holder of a Chase Bank account.

178.    COAF approved the M. Gonzalez Application and funded the Loan (reference no. ending in -1917) based on the information provided by Monzon.

179.    Since the time of funding, COAF discovered that bank statements submitted by Monzon with the M. Gonzalez Loan had several withdrawals identical to those submitted with another individual's application.

180.    COAF relied on these bank statements when funding the loans at issue, including the M. Gonzalez Loan.

181.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the M. Gonzalez Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

**J. Diaz Loan**

182.    Monzon submitted an application for financing for J. Diaz for the purchase of a 2013 Nissan Maxima (hereinafter, the "J. Diaz Application").

183.    The J. Diaz Application reflected an attempt to finance the purchase of a 2013 Nissan Maxima equipped with Bose premium stereo and a sport package from Monzon.

184.    Proof of income was required for the J. Diaz Application. COAF received bank statements from Monzon listing J. Diaz as the account holder of a Bank of America account.

185.    COAF approved the J. Diaz Application and funded the Loan (reference no. ending in -7542) based on the information provided by Monzon.

186.    After funding the J. Diaz Application, COAF contacted the manufacturer to verify information regarding the vehicle purchase.

187.    The manufacturer advised COAF that the vehicle purchased is a 2013 Nissan Maxima SV that is not equipped with Bose premium stereo or sport package.

188.    As a result of the discrepancy between equipment listed by Monzon on the J. Diaz Application that was not included on the vehicle, the value of the vehicle was inflated by $1,700.00.

189.    Since the time of funding, COAF discovered that bank statements submitted by Monzon with the J. Diaz Loan had some withdrawal descriptions identical to those submitted with other individuals' applications.

190.    COAF relied on these bank statements when funding the loans at issue, including the J. Diaz Loan.

191.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the J. Diaz Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### F. Esquivel and G. Perez Loan

192.    Monzon submitted an application for financing for F. Esquivel and G. Perez for the purchase of a 2014 Nissan Sentra (hereinafter, the "Esquivel/Perez Application").

193.    Proof of income was required for the Esquivel/Perez Application. COAF received bank statements from Monzon listing G. Perez as the account holder of a Regions Bank account.

194.    COAF approved the Esquivel/Perez Application and funded the Loan (reference no. ending in -9827) based on the information provided by Monzon.

195.    Since the time of funding, COAF discovered that bank statements submitted by Monzon with the Esquivel/Perez Loan had withdrawal descriptions identical to those submitted with another individual's application.

196.    COAF relied on these bank statements when funding the loans at issue, including the Esquivel/Perez Loan.

197.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Esquivel/Perez Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### Da. Figueroa and Di. Figueroa Loan

198.     Monzon submitted an application for financing for Da. Figueroa and Di. Figueroa for the purchase of a 2014 Nissan Altima (hereinafter, the "Figueroa Application").

199.     Proof of income was required for the Figueroa Application. COAF received bank statements from Monzon listing Di. Figueroa as the account holder of a Wells Fargo bank account.

200.     COAF approved the Figueroa Application and funded the Loan (reference no. ending in -3610) based on the information provided by Monzon.

201.     Since the time of funding, COAF discovered that bank statements submitted by Monzon with the Figueroa Loan had some withdrawal amounts identical to those submitted in another individual's application.

202.     COAF relied on these bank statements when funding the loans at issue, including the Figueroa Loan.

203.     Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Figueroa Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### M. Cruz Loan

204.     Monzon submitted an application for financing for M. Cruz for the purchase of a 2015 Toyota Camry (hereinafter, the "Cruz Application").

205.     Proof of income was required for the Cruz Application. COAF received bank statements from Monzon listing M. Cruz as the account holder of a Chase Bank account.

206.    COAF approved the Cruz Application and funded the Loan (reference no. ending in -7959) based on the information provided by Monzon.

207.    Since the time of funding, COAF discovered that bank statements submitted by Monzon with the Cruz Loan had some withdrawal amounts and descriptions identical to those submitted with another individual's application.

208.    COAF relied on these bank statements when funding the loans at issue, including the Cruz Loan.

209.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Cruz Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### B. Rodriguez Loan

210.    Monzon submitted an application for financing for B. Rodriguez for the purchase of a 2013 Mercedes C Class (hereinafter, the "B. Rodriguez Application").

211.    Proof of income was required for the B. Rodriguez Application. COAF received bank statements from Monzon listing B. Rodriguez as the account holder for a Wells Fargo bank account.

212.    COAF approved the B. Rodriguez Application and funded the Loan (reference no. ending in -3486) based on the information provided by Monzon.

213.    Since the time of funding, COAF discovered that bank statements submitted by Monzon with the B. Rodriguez Application had some withdrawal amounts identical to those submitted with another individual's application.

214.    COAF relied on these bank statements when funding the loans at issue, including the B. Rodriguez Loan.

215.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the B. Rodriguez Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### T. Ramirez Loan

216.    Monzon submitted an application for financing for T. Ramirez for the purchase of a 2012 Ford F150 (hereinafter, the "Ramirez Application").

217.    Proof of income was required for the Ramirez Application. COAF received bank statements from Monzon listing T. Ramirez as the account holder for a Wells Fargo bank account.

218.    COAF approved the Ramirez Application and funded the Loan (reference no. ending in -5717) based on the information provided by Monzon.

219.    Since the time of funding, COAF discovered that bank statements submitted by Monzon with the Ramirez Loan had some withdrawal amounts and descriptions identical to those submitted with another individual's application.

220.    COAF relied on these bank statements when funding the loans at issue, including the Ramirez Loan.

221.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Ramirez Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### R. Beijo and B. Pupodrago Loan

222.    Monzon submitted an application for financing for R. Beijo and B. Pupodrago for the purchase of a 2014 Nissan Altima (hereinafter, the "Beijo/Pupodrago Application").

223.    Proof of income was required for the Beijo/Pupodrago Application. COAF received bank statements from Monzon listing R. Breijo as the account holder for a Wells Fargo bank account.

224.    COAF approved the Beijo/Pupodrago Application and funded the Loan (reference no. ending in -8485) based on the information provided by Monzon.

225.    Since the time of funding, COAF discovered that bank statements submitted by Monzon with the Beijo/Pupodrago Loan had some withdrawal amounts identical to those submitted with another individual's application.

226.    COAF relied on these bank statements when funding the loans at issue, including the Beijo/Pupodrago Loan.

227.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Beijo/Pupodrago Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### S. Barrera Loan

228.    Monzon submitted an application for financing for S. Barrera for the purchase of a 2009 GMC Sierra 1500 (hereinafter, the "Barrera Application").

229.    The Barrera Application reflected an attempt to finance the purchase of a 2009 GMC Sierra 1500 equipped with 6.0L V8 engine, aluminum/alloy wheels, auxiliary fuel tank,

bed liner, Bose premium stereo, fixed running boards, leather seats, power seats, roll bar and towing/camper package from Monzon.

230.    COAF approved the Barrera Application and funded the Loan (reference no. ending in -4279) based on the information provided by Monzon.

231.    After funding the Barrera Application, COAF contacted the manufacturer to verify information regarding the vehicle purchase.

232.    The manufacturer advised COAF that the vehicle is a 2009 GMC Sierra 1500 that is not equipped with 6.0L V8 engine, auxiliary fuel tank, bed liner, Bose premium stereo, fixed running boards, roll bar, or towing/camper package.

233.    As a result of the discrepancy between equipment listed by Monzon on the Barrera Application that was not included with the vehicle, the value of the vehicle was inflated by $1,425.00.

234.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Barrera Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### J. Taylor Loan

235.    Monzon submitted an application for financing for J. Taylor for the purchase of a 2014 Chrysler Town & Country (hereinafter, the "Taylor Application").

236.    The Taylor Application reflected an attempt to finance the purchase of a 2014 Chrysler Town & Country equipped with fixed running boards, navigation system, and towing/camper package from Monzon.

237.    The Taylor Application reflected a cash down payment of $2,000.00 at the time of purchase.

238.    COAF approved the Taylor Application and funded the Loan (reference no. ending in -2896) based on the information provided by Monzon.

239.    After funding the Taylor Application, COAF contacted J. Taylor to verify information regarding the purchase.

240.    J. Taylor advised COAF that the vehicle purchased was a 2014 Chrysler Town & Country that is not equipped with fixed running boards, navigation system, and towing/camper package.

241.    As a result of the discrepancy between equipment listed by Monzon on the Taylor Application that was not included in the vehicle, the value of the vehicle was inflated by $850.00.

242.    J. Taylor also advised COAF that he did not make a down payment at the time of purchase.

243.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Taylor Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

## G. Fernandes Loan

244.    Monzon submitted an application for financing for G. Fernandes for the purchase of a 2013 Hyundai Genesis (hereinafter, the "Fernandes Application").

245.    Proof of income was required for the Fernandes Application. COAF received bank statements from Monzon listing G. Fernandez as the account holder for a Wells Fargo bank account.

246.    COAF approved the Fernandes Application and funded the Loan (reference no. ending in -5704) based on the information provided by Monzon.

247.    Since the time of funding, COAF discovered that bank statements submitted by Monzon with the Fernandes Loan had some withdrawal amounts and descriptions identical to those submitted with another individual's application.

248.    COAF relied on these bank statements when funding the loans at issue, including the Fernandes Loan.

249.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Fernandes Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### C. Crosby Loan

250.    Monzon submitted an application for financing for C. Crosby for the purchase of a 2014 Hyundai Veloster (hereinafter, the "Crosby Application").

251.    Proof of income was required for the Crosby Application. COAF received bank statements from Monzon listing C. Crosby as the account holder for a Regions Bank account.

252.    COAF approved the Crosby Application and funded the Loan (reference no. ending in -7315) based on the information provided by Monzon.

253.   Since the time of funding, COAF discovered that bank statements submitted by Monzon with the Crosby Application had some withdrawal amounts and descriptions identical to those submitted with another individual's application.

254.   COAF relied on these bank statements when funding the loans at issue, including the Crosby Loan.

255.   Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Crosby Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### F. Baro-Baro Loan

256.   Monzon submitted an application for financing for F. Baro-Baro for the purchase of a 2015 Hyundai Accent (hereinafter, the "Baro-Baro Application").

257.   Proof of income was required for the Baro-Baro Application. COAF received bank statements from Monzon listing F. Baro-Baro as the account holder in a Wells Fargo bank account.

258.   COAF approved the Baro-Baro Application and funded the Loan (reference no. ending in -8181) based on the information provided by Monzon.

259.   Since the time of funding, COAF discovered that bank statements submitted by Monzon with the Baro-Baro Loan had some withdrawal amounts identical to those submitted with another individual's application.

260.   COAF relied on these bank statements when funding the loans at issue, including the Baro-Baro Loan.

261.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Baro-Baro Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### Jos. Rodriguez Loan

262.    Monzon submitted an application for financing for Jos. Rodriguez for the purchase of a 2014 Toyota Camry (hereinafter, the "Jos. Rodriguez Application").

263.    Proof of income was required for the Jos. Rodriguez Application. COAF received bank statements from Monzon listing Jos. Rodriguez as the account holder in a Regions Bank account.

264.    COAF approved the Jos. Rodriguez Application and funded the Loan (reference no. ending in -3835) based on the information provided by Monzon.

265.    Since the time of funding, COAF discovered that bank statements submitted by Monzon with the Jos. Rodriguez Application had some withdrawal amounts and descriptions identical to those submitted with another individual's application.

266.    COAF relied on these bank statements when funding the loans at issue, including the Jos. Rodriguez Loan.

267.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Jos. Rodriguez Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### L. Acosta Loan

268.    Monzon submitted an application for financing for L. Acosta for the purchase of a 2015 Nissan Sentra (hereinafter, the "Acosta Application").

269.    Proof of income was required for the Acosta Application. COAF received bank statements from Monzon listing L. Acosta as the account holder in a Wells Fargo Bank account.

270.    COAF approved the Acosta Application and funded the Loan (reference no. ending in -2710) based on the information provided by Monzon.

271.    Since the time of funding, COAF discovered that bank statements submitted by Monzon with the Acosta Application had some withdrawal amounts and descriptions identical to those submitted with another individual's application.

272.    COAF relied on these bank statements when funding the loans at issue, including the Acosta Loan.

273.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Acosta Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### Y. Marquez Loan

274.    Monzon submitted an application for financing for Y. Marquez for the purchase of a 2014 Hyundai Elantra (hereinafter, the "Marquez Application").

275.    Proof of income was required for the Marquez Application. COAF received bank statements from Monzon listing Y. Marquez as the account holder for a Bank of America account.

276.    COAF approved the Marquez Application and funded the Loan (reference no. -1615) based on the information provided by Monzon.

277.    Since the time of funding, COAF discovered that bank statements submitted by Monzon with the Marquez Application had some withdrawal amounts and descriptions identical to those submitted with another individual's application.

278.    COAF relied on these bank statements when funding the loans at issue, including the Marquez Loan.

279.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Marquez Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### Ab. Rodriguez Loan

280.    Monzon submitted an application for financing for Ab. Rodriguez for the purchase of a 2015 Nissan Rogue (hereinafter, the "Ab. Rodriguez Application").

281.    Proof of income was required for the Ab. Rodriguez Application. COAF received bank statements from Monzon listing Ab. Rodriguez as the account holder for a Wells Fargo bank account.

282.    COAF approved the Ab. Rodriguez Application and funded the Loan (reference no. ending in -7689) based on the information provided by Monzon.

283.    Since the time of funding, COAF discovered that bank statements submitted by Monzon with the Ab. Rodriguez Application had some withdrawal amounts and descriptions identical to those submitted with another individual's application.

284.    COAF relied on these statements when funding the loans at issue, including the Ab. Rodriguez Loan.

285.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Ab. Rodriguez Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### G. Rodriguez Loan

286.    Monzon submitted an application for financing for G. Rodriguez for the purchase of a 2014 Hyundai Accent (hereinafter, the "G. Rodriguez Application").

287.    Proof of income was required for the G. Rodriguez Application. COAF received bank statements from Monzon listing G. Rodriguez as the account holder for a Wells Fargo bank account.

288.    COAF approved the G. Rodriguez Application and funded the Loan (reference no. ending in -1089) based on the information provided by Monzon.

289.    Since the time of funding, COAF discovered that bank statements submitted by Monzon with the G. Rodriguez Application had some withdrawal amounts identical to those submitted with another individual's application.

290.    COAF relied on these bank statements when funding the loans at issue, including the G. Rodriguez Loan.

291.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the G. Rodriguez Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### J. Estrada Loan

292.     Monzon submitted an application for financing from J. Estrada for the purchase of a 2012 Nissan Maxima (hereinafter, the "Estrada Application").

293.     Proof of income was required for the Estrada Application. COAF received bank statements from Monzon listing J. Estrada as the account holder for a Wells Fargo bank account.

294.     COAF approved the Estrada Application and funded the Loan (reference no. ending in -7119) based on the information provided by Monzon.

295.     Since the time of funding, COAF discovered that bank statements submitted by Monzon with the Estrada Application had some withdrawal amounts and descriptions identical to those submitted with another individual's application.

296.     COAF relied on these bank statements when funding the loans at issue, including the Estrada Loan.

297.     Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Estrada Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### M. Hernandez Loan

298.     Monzon submitted an application for financing for M. Hernandez for the purchase of a 2013 Ford Explorer (hereinafter, the "Hernandez Application").

299.     Proof of income was required for the Hernandez Application. COAF received bank statements from Monzon listing M. Hernandez as the account holder in a Bank of America account.

300.    COAF approved the Estrada Application and funded the Loan (reference no. ending in -0584) based on the information provided by Monzon.

301.    Since the time of funding, COAF discovered that bank statement submitted by Monzon with the Hernandez Application had some withdrawal amounts and descriptions identical to those submitted with another individual's application.

302.    COAF relied on these bank statements when funding the loans at issue, including the Hernandez Loan.

303.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Hernandez Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### A. Gonzalez Loan

304.    Monzon submitted an application for financing for A. Gonzalez for the purchase of a 2010 Ford Transit Connect (hereinafter, the "A. Gonzalez Application").

305.    Proof of income was required for the A. Gonzalez Application. COAF received bank statements from Monzon listing A. Gonzalez as the account holder for a Chase Bank account.

306.    COAF approved the Estrada Application and funded the Loan (reference no. ending in -0399) based on the information provided by Monzon.

307.    Since the time of funding, COAF discovered that bank statement submitted by Monzon with the A. Gonzalez Application had some withdrawal amounts and descriptions identical to those submitted in another individual's application.

308.    COAF relied on these bank statements when funding the loans at issue, including the A. Gonzalez Loan.

309.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the A. Gonzalez Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### E. Sentmanat Loan

310.    Monzon submitted an application for financing for E. Sentmanat for the purchase of a 2011 Ford Transit Connect (hereinafter, the "Sentmanat Application").

311.    Proof of income was required for the Sentmanat Application. COAF received bank statements from Monzon listing E. Sentmanat as the account holder for a Chase Bank account.

312.    COAF approved the Sentmanat Application and funded the Loan (reference no. ending in -0418) based on the information provided by Monzon.

313.    Since the time of funding, COAF discovered that bank statement submitted by Monzon with the Sentmanat Application had some withdrawal amounts and descriptions identical to those submitted with another individual's application.

314.    COAF relied on these bank statements when funding the loans at issue, including the Sentmanat Loan.

315.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Sentmanat Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### M. Batista Loan

316.    Monzon submitted an application for financing for M. Batista for the purchase of a 2014 Toyota Yaris (hereinafter, the "Batista Application").

317.    Proof of income was required for the Batista Application. COAF received bank statements from Monzon listing M. Batista as the account holder for a Regions Bank account.

318.    COAF approved the Batista Application and funded the Loan (reference no. ending in -4538) based on the information provided by Monzon.

319.    Since the time of funding, COAF discovered that bank statement submitted by Monzon with the Batista Application had identical withdrawal amounts and descriptions to those submitted with another individual's application.

320.    COAF relied on these bank statements when funding the loans at issue, including the Batista Loan.

321.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Batista Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### C. Margetson Loan

322.    Monzon submitted an application for financing for C. Margetson for the purchase of a 2014 Nissan Maxima (hereinafter, the "Margetson Application").

323.    Proof of income was required for the Margetson Application. COAF received bank statements from Monzon listing C. Margetson as the account holder for a Bank of America account.

324.    COAF approved the Margetson Application and funded the Loan (reference no. ending in -3248) based on the information provided by Monzon.

325.    Since the time of funding, COAF discovered that bank statement submitted by Monzon with the Margetson Application had some withdrawal amounts and descriptions identical to those submitted with another individual's application.

326.    COAF relied on these bank statements when funding the loans at issue, including the Margetson Loan.

327.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Margetson Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### C. Martin Loan

328.    Monzon submitted an application for financing for C. Martin for the purchase of a 2014 Chevrolet Equinox (hereinafter, the "Martin Application").

329.    Proof of income was required for the Martin Application. COAF received bank statements from Monzon listing C. Martin as the account holder for a Bank of America account.

330.    COAF approved the Martin Application and funded the Loan (reference no. ending in -9936) based on the information provided by Monzon.

331.    Since the time of funding, COAF discovered that bank statement submitted by Monzon with the Martin Application had some withdrawal amounts and descriptions identical to those submitted with another individual's application.

332.    COAF relied on these bank statements when funding the loans at issue, including the Martin Loan.

333.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Martin Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### C. Lacono Loan

334.    Monzon submitted an application for financing for C. Lacono for the purchase of a 2013 Dodge Journey (hereinafter, the "Lacono Application").

335.    Proof of income was required for the Lacono Application. COAF received bank statements from Monzon listing C. Lacono as the account holder in a Bank of America account.

336.    COAF approved the Lacono Application and funded the Loan (reference no. ending in -8962) based on the information provided by Monzon.

337.    Since the time of funding, COAF discovered that bank statement submitted by Monzon with the Lacono Application had some withdrawal amounts and descriptions identical to those submitted with another individual's application.

338.    COAF relied on these bank statements when funding the loans at issue, including the Lacono Loan.

339.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Lacono Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### Jo. Rodriguez Loan

340.    Monzon submitted an application for financing for Jo. Rodriguez for the purchase of a 2014 Nissan Maxima (hereinafter, the "Jo. Rodriguez Application").

341.    Proof of income was required for the Jo. Rodriguez Application. COAF received bank statements from Monzon listing Jo. Rodriguez as the account holder in a Chase Bank account.

342.    COAF approved the Jo. Rodriguez Application and funded the Loan (reference no. ending in -0802) based on the information provided by Monzon.

343.    Since the time of funding, COAF discovered that bank statement submitted by Monzon with the Jo. Rodriguez Application had some withdrawal amounts and descriptions identical to those submitted with another individual's application.

344.    COAF relied on these bank statements when funding the loans at issue, including the Jo. Rodriguez Loan.

345.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Jo. Rodriguez Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

## Jor. Rodriguez Loan

346.    Monzon submitted an application for financing for Jor. Rodriguez for the purchase of a 2013 Mazda 2 (hereinafter, the "Jor. Rodriguez Application").

347.    Proof of income was required for the Jor. Rodriguez Application. COAF received bank statements from Monzon listing Jor. Rodriguez as the account holder in a Chase Bank account.

348.    COAF approved the Jor. Rodriguez Application and funded the Loan (reference no. ending in -9795) based on the information provided by Monzon.

349.    Since the time of funding, COAF discovered that bank statement submitted by Monzon with the Jor. Rodriguez Application had some withdrawal amounts and descriptions identical to those submitted with another individual's application.

350.    COAF relied on these bank statements when funding the loans at issue, including the Jor. Rodriguez Loan.

351.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Jor. Rodriguez Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

## E. Rodriguez Loan

352.    Monzon submitted an application for financing for E. Rodriguez for the purchase of a 2011 Mercedes GLK Class (hereinafter, the "E. Rodriguez Application").

353.    Proof of income was required for the E. Rodriguez Application. COAF received bank statements from Monzon listing E. Rodriguez as the account holder in a Bank of America account.

354.    COAF approved the E. Rodriguez Application and funded the Loan (reference no. ending in -9643) based on the information provided by Monzon.

355.    Since the time of funding, COAF discovered that bank statement submitted by Monzon with the E. Rodriguez Application had some withdrawal descriptions identical to those submitted with another individual's application.

356.    COAF relied on these bank statements when funding the loans at issue, including the E. Rodriguez Loan.

357.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the E. Rodriguez Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### E. Fils Loan

358.    Monzon submitted an application for financing for E. Fils for the purchase of a 2014 Toyota Corolla (hereinafter, the "Fils Application").

359.    The Fils Application reflected a cash down payment of $3,000.00 at the time of purchase.

360.    COAF approved the Fils Application and funded the Loan (reference no. ending in -7318) based on the information provided by Monzon.

361.   After funding the Fils Application, COAF contacted E. Fils to verify information regarding the purchase.

362.   E. Fils advised COAF that she made a down payment of only $2,000.00 cash at the time of purchase.

363.   Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Fils Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### V. Diaz Loan

364.   Monzon submitted an application for financing for V. Diaz for the purchase of a 2015 Nissan Altima (hereinafter, the "V. Diaz Application").

365.   Proof of income was required for the V. Diaz Application. COAF received bank statements from Monzon listing V. Diaz as the account holder in a Regions Bank account.

366.   COAF approved the V. Diaz Application and funded the Loan (reference no. ending in -2075) based on the information provided by Monzon.

367.   Since the time of funding, COAF discovered that bank statement submitted by Monzon with the V. Diaz Application had some withdrawal amounts similar to those submitted in other individuals' applications.

368.   COAF relied on these bank statements when funding the loans at issue, including the Victor Puig Diaz Loan.

369.   Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the V. Diaz Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### D. Mayoral Loan

370.   Monzon submitted an application for financing for D. Mayoral for the purchase of a 2015 Hyundai Elantra (hereinafter, the "Mayoral Application").

371.   Proof of income was required for the Mayoral Application. COAF received bank statements from Monzon listing D. Mayoral as the account holder for a Chase Bank account.

372.   COAF approved the D. Mayoral Application and funded the Loan (reference no. ending in -2818) based on the information provided by Monzon.

373.   Since the time of funding, COAF discovered that bank statement submitted by Monzon with the Mayoral Application had some withdrawal amounts and descriptions identical to those submitted with another individual's application.

374.   COAF relied on these bank statements when funding the loans at issue, including the Mayoral Loan.

375.   Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Mayoral Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### M. Rodriguez Loan

376.   Monzon submitted an application for financing for M. Rodriguez for the purchase of a 2015 Kia Sorento (hereinafter, the "M. Rodriguez Application").

377.    Proof of income was required for the M. Rodriguez Application. COAF received bank statements from Monzon listing M. Rodriguez as the account holder of a Bank of America account.

378.    COAF approved the M. Rodriguez Application and funded the Loan (reference no. ending in -1897) based on the information provided by Monzon.

379.    Since the time of funding, COAF discovered that bank statement submitted by Monzon with the M. Rodriguez Application had some withdrawal descriptions identical to those submitted with another individual's application.

380.    COAF relied on these bank statements when funding the loans at issue, including the M. Rodriguez Loan.

381.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the M. Rodriguez Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### S. Canales Loan

382.    Monzon submitted an application for financing for S. Canales for the purchase of a 2014 Toyota Corolla (hereinafter, the "Canales Application").

383.    Proof of income was required for the Canales Application. COAF received bank statements from Monzon listing S. Canales as the account holder for a Bank of America bank account.

384.    COAF approved the Canales Application and funded the Loan (reference no. ending in -3504) based on the information provided by Monzon.

385.    Since the time of funding, COAF discovered that bank statement submitted by Monzon with the Canales Application had some withdrawal amounts and descriptions identical to those submitted with another individual's application.

386.    COAF relied on these bank statements when funding the loans at issue, including the Canales Loan.

387.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Canales Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### L. Marrero Loan

388.    Monzon submitted an application for financing for L. Marrero for the purchase of a 2015 Dodge Journey (hereinafter, the "Marrero Application").

389.    Proof of income was required for the Marrero Application. COAF received bank statements from Monzon listing L. Marrero as the account holder for a BB&T account.

390.    COAF approved the Marrero Application and funded the Loan (reference no. ending in -3504) based on the information provided by Monzon.

391.    Since the time of funding, COAF discovered that the bank statement submitted by Monzon with the Marrero Application appeared altered with the withdrawal descriptions in a different format than the deposit descriptions

392.    COAF relied on these bank statements when funding the loans at issue, including the Marrero Loan.

393.    Pursuant to Section 3 of the Contract, COAF demanded Monzon repurchase the Marrero Loan on September 30, 2016 (See Ex. 2). Monzon has failed and/or refused to repurchase the Loan.

### R. Smiley Loan

394.    COAF financed the purchase of a 2008 Mercedes E-Class for R. Smiley from Monzon (Loan ID ending in -8134).

395.    Following repossession of the vehicle on June 28, 2016, COAF was entitled to a refund of the Gap Contract paid to Monzon.

396.    Pursuant to Section 3 of the Contract, COAF demanded Monzon remit the refund owed on October 17, 2016 (See Letter to Monzon, attached hereto as Ex. 3, without exhibits). Monzon has failed and/or refused to remit the refund owed to COAF

### B. Rodriguez Loan

397.    COAF financed the purchase of a 2007 Lexus ES350 for B. Rodriguez from Monzon (Loan ID ending in -8874).

398.    Following repossession of the vehicle on May 17, 2016, COAF was entitled to a refund of the Gap Contract paid to Monzon.

399.    Pursuant to Section 3 of the Contract, COAF demanded Monzon remit the refund owed on October 17, 2016 (See Ex. 3). Monzon has failed and/or refused to remit the refund owed to COAF.

### A. Betancourt Loan

400.    COAF financed the purchase of a vehicle for A. Betancourt (Loan ID ending in -8432).

401.    Monzon never provided COAF with a perfected title.

402.    Pursuant to Section 1, subsection (d) of the Contract, COAF demanded Monzon to provide confirmation of perfected title to COAF on October 17, 2016 (See Ex. 3). Monzon has failed and/or refused to provide confirmation of perfected title to COAF.

## COUNT I – BREACH OF CONTRACT

403.    COAF incorporates and re-alleges paragraphs 1 through 402 of this Complaint the same as if fully set forth herein.

404.    The Contract represents a valid and binding agreement between COAF and Monzon.

405.    COAF fully performed all of its duties and obligations under the Contract.

406.    Monzon materially breached the express terms of the Contract by failing to repurchase the Loans and remit payment on refunds owed to COAF following Monzon's breach of representations and warranties in Section 1, subsections (d), (j), (k), (p), and (q) of the Contract.

407.    As a result of Monzon's breach of the Contract, COAF has suffered damages.

408.    COAF is entitled to recover actual damages, interest, costs and attorneys' fees for Monzon's breach of contract.

WHEREFORE, COAF demands a trial by jury, actual damages, interest, costs, and attorneys' fees from Monzon and whatever additional relief the trier of fact deems just and proper to award.

## COUNT II – FRAUD IN THE INDUCEMENT

409.    COAF incorporates and re-alleges paragraphs 1 through 402 of this Complaint the same as fully set forth herein.

410.    Monzon knowingly made false statements to COAF regarding the borrowers and/or the value of vehicles financed by COAF.

411.    Monzon made these statements with the intent of inducing COAF to finance the purchase of vehicles by borrowers from Monzon.

412.    COAF relied on Monzon's false representations.

413.    COAF's reliance on Monzon's false representations has caused injury to COAF.

414.    COAF is entitled to recover actual damages, punitive damages, interest, costs and attorneys' fees from Monzon.

WHEREFORE, COAF demands a trial by jury, actual damages, punitive damages, interest, costs and attorneys' fees from Monzon as well as whatever relief the trier of fact deems just and proper to award.

## COUNT III – CONVERSION

415.    COAF incorporates and re-alleges paragraphs 1 through 402 of this Complaint as fully set forth herein.

416.    Monzon, without authorization, has deprived COAF of its property, including payment for the Loans described in this Complaint and refunds on Gap Contracts owed to COAF for the Loans described in this Complaint.

417.   COAF demanded that Monzon return payment for the Loans and to remit refunds owed to COAF on the Loans described in this Complaint.

418.   Monzon has failed and/or refused to return COAF's property.

419.   COAF is entitled to recover actual damages, punitive damages, interest, costs and attorneys' fees from Monzon.

WHEREFORE, COAF demands:

- Trial by jury;
- Actual damages;
- Punitive damages;
- Interest, costs, and attorneys' fees;
- Whatever additional relief the trier of fact deems just and proper to award.

Respectfully submitted this 9th day of December 2016.


*s/ Joshua H. Threadcraft*
Joshua H. Threadcraft (FL Bar No.: 96153)

*Attorney for Capital One Auto Finance, a division of Capital One, N.A.*

BURR & FORMAN LLP
420 North 20th Street
Suite 3400
Birmingham, AL  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100